# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| TIMOTHY S. WINSETT, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 6:08-CV-1225-VEH |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner, | ) |
| Social Security Administration, | ) |
| | ) |
|    Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Timothy S. Winsett (hereinafter "Mr. Winsett") brings this action pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), which denied his application for Disability Insurance Benefits ("DIB"). Mr. Winsett timely pursued and exhausted his administrative remedies available before the Commissioner. The case is ripe for review pursuant to 42 U.S.C. § 405(g) of the Social Security Act.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Winsett was a 43-year-old male at the time of his hearing before the

administrative law judge (hereinafter "ALJ").  (Tr. 288).  He has an eighth grade education.  (Tr. 288).  Mr. Winsett's past work experience includes employment as a tractor trailer driver.  (Tr. 289).  Mr. Winsett claims he became disabled beginning on June 4, 2005, due to insulin dependent diabetes mellitus[1] with ketoacidosis,[2] vision disturbances due to diabetes, carpal tunnel syndrome, adjustment disorder with depressed mood, history of back pain status post laminectomy for ruptured disc at L4-5, lumbar degenerative disc disease, and mental retardation.  (Tr. 24-27).  He has not engaged in substantial gainful activity ("SGA") since June 4, 2005, through his date last insured of March 31, 2006.  (Tr. 24).

Mr. Winsett filed his application for DIB on July 21, 2005.  (Tr. 22).  The claim was denied by notice dated December 9, 2005.  (Tr. 22).  Mr. Winsett filed a timely written request for a hearing on January 5, 2006.  (Tr. 22).

The hearing was held on January 31, 2007.  (Tr. 22).  The ALJ concluded that Mr. Winsett was not disabled and denied his application on March 30, 2007.  (Tr. 32).

---

[1] "Chronic syndrome of impaired carbohydrate, protein and fat metabolism owing to insufficient secretion of insulin or to target tissue insulin secretion."  *Dorland's Illustrated Medical Dictionary* 456, 457 (1994).

[2] "Diabetic ketoacidosis is a serious complication of diabetes and develops when there is too little insulin the body.  The result is sugar (glucose) can't enter your cells for energy, blood sugar rises and the body begins to break down fat for energy.  This produces toxic acids known as ketone." (Mayo Foundation for Medical Education and Research 1998-2009).  Available online at: http://www.mayoclinic.com/health/diabetic-ketoacidosis/DS00674

On April 25, 2008, the Appeals Council denied Mr. Winsett's timely request for review, making the decision of the ALJ stand as the final decision of the Commissioner. (Tr. 7).

Mr. Winsett filed a Complaint on July 11, 2008, which asks this court to review the ALJ's decision. (Doc. #1). This court has carefully considered the record and reverses and remands the decision of the ALJ.

## **STANDARD OF REVIEW**

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.*

## **STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish his entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3]  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a).  To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;
    (2)    whether the claimant has a severe impairment;
    (3)    whether the claimant's impairment meets or equals an impairment listed by the Secretary;

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through June 12, 2009.

  (4) whether the claimant can perform her past work; and
  (5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

The ALJ found that Mr. Winsett had not engaged in substantial gainful activity since June 4, 2005, the alleged onset date, through his date last insured of March 31, 2006. (Tr. 24). He also found that Mr. Winsett's impairments of insulin dependent diabetes mellitus and carpal tunnel syndrome to be "severe" impairments when considered within the meaning of 20 C.F.R. § 404.1520(c). (Tr. 24). Further, the ALJ found that all other stated impairments by Mr. Winsett were not severe. (Tr. 25-

27). The ALJ also determined that the medically determinable impairments, both singularly and in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Social Security Regulations. (Tr. 26).

Then the ALJ found that the Mr. Winsett did not meet the requirements for listing 12.05C as there was no record of an IQ of less than 69. (Tr. 26). In addition, Mr. Winsett also failed to meet the requirements of listings 12.04. (Tr. 27). Listing 12.04 requires depressive syndrome resulting in marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence and pace, and a marked restriction of activities of daily living or repeated episodes of decompensation of extended duration. (Tr. 27). The ALJ stated that Mr. Winsett failed to meet the requirements of 12.04 because "there is no evidence that shows his condition results in two marked functional limitations." (Tr. 27).

Moreover, the ALJ found that Mr. Winsett did not meet the criteria for listing 1.04. (Tr. 27). The ALJ asserted Mr. Winsett did not meet this criteria because the "claimant must show an inability to ambulate effectively." (Tr. 27). Further, the ALJ found that the medical evidence contained in the record does not confirm that Mr. Winsett has any "sensory or reflex loss or positive straight leg raising." (Tr. 27).

Lastly, the ALJ stated that Mr. Winsett does not meet listing 9.08 of diabetes

mellitus because to meet such a listing the claimant must have "neuropathy demonstrated by significant and persistent disorganization of motor functions in two extremities resulting in sustained disturbance of gross and dexterous movements, gait or station." (Tr. 27). Additionally, the ALJ found that Mr. Winsett does not meet listing 9.08 because there is "no evidence of disorganization of motor functions in his extremities." (Tr. 27).

The ALJ next concluded that Mr. Winsett retains the residual functional capacity to perform a limited range of "light" exertional work.[4] (Tr. 27). The ALJ then determined that Mr. Winsettt is unable to perform any past relevant work. (Tr. 30). The vocational expert ("VE") testified that Mr. Winsett's work experience is characterized by the Dictionary of Occupational Titles[5] as "medium"[6] in exertional level and "semi-skilled." (Tr. 300). The VE further testified that the last job Mr. Winsett had as a tractor trailer driver fits this classification. (Tr. 300). The ALJ then posed hypothetical questions to the VE regarding Mr. Winsett's age, education, past

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b).

[5] The Dictionary of Occupational Titles provides different examples of work activities that fall within the residual functioning capacity for medium work. (Washington, D.C.: U.S. Dept. of Labor, Employment and Training Administration: U.S. G.P.O., 1993). Available online at: http://www.occupationalinfo.org.

[6] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

relevant work, and his ability to perform medium work with certain restrictions and limitations. (Tr. 300-01). The restrictions and limitations included occasionally working around ladders, ropes and scaffolds, ability to understand and remember simple instructions, performing simple tasks over an eight hour work day with breaks and any contact with co-workers, supervisors or the general public should be casual and non-confrontational. (Tr. 301). Further, the ALJ clarified that any change in the work place should be introduced slowly. (Tr. 301). The VE stated that these limitations would rule out work as a truck driver or any semi-skilled job and would limit a person to unskilled work. (Tr. 301).

Lastly, based on the factors outlined above, the VE stated that there are jobs that exist in significant numbers in the national economy in which a person with these limitations can perform. (Tr. 301). Specifically, the jobs stated by the VE were as a hand packer, laundry worker, and kitchen helper. (Tr. 301-02).

The ALJ then considered another hypothetical and posed questions to the VE regarding it. In this hypothetical, he asked the VE to consider the same limitations as in hypothetical number one with additional functions included. The additional functions consisted of the ability to climb ramps and stairs, balance, stoop, kneel, crouch and crawl but not be permitted to work around ladders, ropes, scaffolds, hazardous machinery and unprotected heights. (Tr. 302). The ALJ also indicated that

the hypothetical individual should avoid all exposure to vibrations. (Tr. 302). The VE indicated based on these limitations that the same jobs described above as medium and unskilled would be available. (Tr. 302).

The ALJ posed a third hypothetical to VE in which this third scenario would be the same as number two above except the individual would be limited to light work. (Tr. 303). The VE stated there would be some light jobs in the economy available under those restrictions that include inspectors, packers, and labelers. (Tr. 303).

Lastly, based on the scenarios and factors outlined above and Mr. Winsett's residual functional capacity, the VE testified that there are jobs that exist in significant numbers in the national economy that Mr. Winsett can perform. (Tr. 301-03). The ALJ then concluded that, based on these findings, Mr. Winsett was not disabled as defined by the Social Security Act, at any time from June 4, 2005 through March 31, 2006, the date last insured. (citing 20 C.F.R. § 404.1520(g)). (Tr. 31).

## FINDINGS AND HOLDINGS OF THE COURT

Mr. Winsett seeks to have the ALJ's decision, which is the final decision of the Commissioner due to the denial of review by the Appeals Council on April 25, 2008, remanded for further proceedings to determine disability status, or that further relief such as the award of benefits may be just. (Tr. 7; Doc. #9 at 33). In making this

request, Mr. Winsett asserts that the ALJ erred by "improperly discounting the treating physician's residual functional capacities evaluation and standard of pain, also by discrediting his subjective complaints without substantial evidence, failure to consider the combination and cumulative effect of his impairments; and, the ALJ erred by failing to ask the VE proper hypothetical questions including all the claimant's impairments." (Doc. #9 at 22, 25, 26, 27, 28, 30, 32). Further, Mr. Winsett contends that the Appeals Council erred by failing to remand his case based on additional new evidence. (Doc. #9 at 33).

### I.     The ALJ Did Not Pose Proper Questions to the VE of the Combined Effects of Mr. Winsett's Severe Impairments.[7]

In its review, the court finds that the ALJ failed to apply the correct legal standards to Mr. Winsett's claim and that the ALJ's decision of no disability was not supported by substantial evidence. The ALJ wrote a lengthy opinion and stated that all impairments were considered. (Tr. 23).

However, although the ALJ's opinion included this statement, in actuality he failed to include the name or any of the symptoms related to diabetes mellitus with ketoacidosis in the three hypothetical scenarios he posed to the VE. (Tr. 300-04).

---

[7] The court notes that the following overall framework and analysis was used in *Reed v. Astrue,* No. 2:07-CV-0914 VEH (Doc. #13) (N.D. Ala. Feb. 27, 2008). *Reed* similarly resulted in a remand. (Doc. #14).

Therefore, the VE's testimony did not factor in the impact that Mr. Winsett's severe impairment of diabetes mellitus with ketoacidosis would have on his ability to perform work.

The ALJ's failure to take into consideration all of Mr. Winsett's impairments when posing questions to the VE renders the VE's assessment (and consequently the ALJ's reliance upon the VE's opinion) inadequate with respect to Mr. Winsett's situation.  As the Eleventh Circuit explained in *Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999), "[i]n order for a VE's testimony to constitute substantial evidence the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."

Similarly, the Eleventh Circuit determined in *Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985), that "unless there was vocational expert testimony concerning the availability of jobs for a person with the claimant's educational level, work skills and experience and physical limitations, the decision of the ALJ, based significantly on expert testimony, would be unsupported by substantial evidence." Here the ALJ relied heavily upon the VE's testimony to support his conclusion that Mr. Winsett was not disabled but failed to include a critical piece of Mr. Winsett's overall medical condition when eliciting testimony from the VE.

Furthermore, this court has previously ruled that when the ALJ fails to pose

questions to the VE concerning all of the claimant's ailments, the VE cannot make a proper assessment of the situation and the case is due to be remanded. *See Reed v. Astrue,* No. 2:07-CV-914-VEH (Doc. #13) (N.D. Ala. Feb. 27, 2008). Accordingly, and consistent with *Jones*, *Pendley*, and *Reed*, the failure by the ALJ to properly question the VE regarding all of Mr. Winsett's impairments, specifically omitting any reference to his diabetes mellitus with ketoacidosis, is sufficient grounds to remand for further assessment because the ALJ's decision is not based on substantial evidence.[8]

## **CONCLUSION**

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, this court finds that the Commissioner's final decision is not supported by substantial evidence and the Commissioner did not apply the proper legal standard. Accordingly, the decision of the Commissioner is due to be reversed and remanded and a separate order in accordance with this memorandum of opinion will be entered.

---

[8] Since the court reverses on the improper questioning of the VE issue, it does not rule on any of the other grounds asserted by Mr. Winsett on appeal and identified *supra* at 9 -10.

**DONE** and **ORDERED** this the 29th day of June, 2009.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge